## JOHN CALLAGHAN v. J. LOGAN CHIPMAN, JUDGE OF THE SUPERIOR COURT OF DETROIT.

*Title to statute—Object to be expressed therein—Amendatory statutes should refer to subjects or the entire statute, instead of sections—Legislative journals—Court may take notice of in determining if a law has been constitutionally enacted.*

1. Section 21 of Act 62, Public Acts of 1885, entitled " an act  *  *  * relative to filling vacancies in the Superior Court of Detroit," but which section provides for the transfer of cases from and to the said Superior Court, is in conflict with section 20, Art. 4 of the constitution, and therefore void.

2. The practice of amending statutes by reference to sections, instead of subjects, or the entire statute, is a very unsatisfactory compliance with the requirements of the constitution.

3. This Court may take notice of the legislative journals in determining whether or not a law has been enacted in accordance with the provisions of the constitution.

Mandamus to Judge of Superior Court of Detroit to vacate an order, remanding a case to the circuit court of Wayne county.

Argued January 19, 1886.   Granted February 10, 1886. The facts are stated in the opinion.

*Conely, Maybury & Lucking,* for relator.

*Geo. H. Prentis,* for respondent.

SHERWOOD, J.  Suit was commenced by Hollis Jacobs against the said Callaghan on the eighteenth day of May, 1885, in the Wayne circuit court.  Upon filing the bond required by statute, and upon the petition of the defendant, the cause was transferred for further proceedings to the Superior Court of Detroit, on the ninth day of June, 1885.

On the fifteenth day of December following, upon the petition of the plaintiff in the case, the cause was remanded,

·by order of the Superior Court, to the circuit court for the county of Wayne for trial.

The relator now comes into this Court and asks for a mandamus, requiring the judge of the Superior Court to vacate and set aside the order made by him remanding said cause to the circuit court, he having refused so to do on petition of the plaintiff.

Respondent shows cause, and in his return says that the case was improperly transferred to the Superior Court by the circuit court for the county of Wayne, and further states "that the facts, proceedings, and orders are correctly stated in the petition of relator."

The act establishing the superior court of Detroit was adopted in March, 1873. How. Stat. c. 245, p. 1693. The act was entitled "An act to provide for a municipal court in the city of Detroit, to be called the 'Superior Court of Detroit.'" Laws 1873, p. 61. The act has since been amended three times: in 1875 (see Laws 1875, p. 5), in 1879 (see Laws 1879, p. 90), and in 1885. By this last amendment the act passed in 1879 purports to be amended, and is referred to as including "sections 6539 and 6555 of Howell's Annotated Statutes." See Laws 1885, p. 61.

The title to this last named act reads as follows :

"An act to amend sections 5 and 21, of act number 97, of the Session Laws of 1879, as amended, being sections 6539 and 6555 of Howell's Annotated Statutes of Michigan of 1882, relative to filling vacancies in the superior court of Detroit."

The act of 1885 consists of two sections, numbered, respectively, 5 and 21, the latter of which is given in the margin.[1]

---

[1] Sec. 21. Said court, upon good cause shown, may change the venue in any cause pending therein, and direct the issue to be tried in the circuit court for the county of Wayne, and make all necessary rules and orders for the certifying and removing such cause, and all matters relating thereto, to said circuit court; and said circuit court to which such cause shall be so removed, shall proceed to hear, try, and determine the same, and execution may thereupon be had in the same manner as if the same had been originally prosecuted in said circuit court; and causes may be transferred from the circuit court of said Wayne county to the said superior court on the same terms, and in the same manner, as above provided for the transfer of causes from the said superior court to said Wayne circuit court.

Under the original act creating the superior court of Detroit, and the acts amendatory thereto, previous to that of 1885, there was no provision for the removal or transfer of causes from the superior court to the circuit. In fact, the main object in establishing the superior court was to relieve the circuit court for the county of Wayne from the plethora caused by the long-continued accumulation of business therein, and for that purpose, or perhaps for the purpose of more immediate relief, the circuit court was authorized, upon the application of either party, and upon filing a bond for certain purposes required by the statute, to transfer a cause from the circuit to the superior court for further proceedings, provided the cause was within the jurisdiction of the latter. See How. Stat. § 6555. The amendment of 1885, however, provides for the transfer of causes from the superior court to the circuit, as well as from the circuit to the superior court. It is an order of this kind, made under the statute of 1885, by the judge of the superior court, that relator asks to have set aside.

There seems to be no contest but that the transfer of the cause to the superior court was regular and proper. From first impressions, it would most naturally appear that in the change made in the law in establishing the superior court, one of the principal objects to be attained in creating that court had been lost sight of in making the amendment of 1885. However this may be, the Legislature had the power to make the amendment, and the fact cannot be considered in this case only as it has a bearing upon the necessity for more closely considering the legality of the action taken, by which it has been done, if at all.

Counsel for the parties very ably discussed the question involved, upon the hearing, and have furnished us also with briefs showing patient research and investigation, which have materially aided us in our examination of the subject presented. The learned counsel for the relator bases his right to the writ prayed for alone upon the alleged unconstitutionality of the law of 1885. Laws 1885, p. 61. This is placed upon two grounds.

(1) That the title of the act fails to comply with article 4, § 20, of the constitution, which requires that "no law shall embrace more than one object, which shall be expressed in its title;"

(2) That section 28 of article 4 of the constitution provides that "no new bills shall be introduced into either house of the Legislature after the first fifty days of the session shall have expired," and that section numbered 21 of the act was not introduced, and constituted no part of the bill, until a hundred days after the session commenced.

Of course, the latter ground, whether tenable or not, depends very much upon the disposition to be made of the first, because, if the title of the act is not defective, and sufficiently broad to cover section numbered 21, and the subject is germane to the principal object stated in the other section, it might properly be introduced by way of amendment after the first fifty days of the session had expired.

The first ground stated is the one presenting, as I view the case, the important question to be settled. The intention, scope, and object to be accomplished by the adoption of the twentieth section of article 4 of our constitution has been so often before this Court, and so frequently and well stated, that I could not hope to add anything new or useful by a further discussion of the subject here. Much that has been said has found its way into the text books of the country, and has come to be regarded and accepted as elementary law. I shall therefore only refer to a statement of such principles and views as I regard as applicable to, and which necessarily rule, this case.

It is not necessary to set out in the title of an act every end and means necessary for the accomplishment of the general object sought by the legislation contemplated. "The generality of a title is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection." Cooley, Const. Lim. 144; *Harrington v. Wands*, 23 Mich. 385; *Kurtz v. People*, 33 Mich. 279; *People v. Briggs*, 50 N. Y. 553. "If the act is broader than the title, it may happen that one part of it can

stand, because indicated by the title, while, as to the object'
not indicated by the title, it must fail." Cooley, Const. Lim.
148. "If, by striking from the act all that relates to the
object not indicated by the title, that which is left is com-
plete in itself, sensible, capable of being executed, and wholly
independent of that which is rejected, it must be sustained as
constitutional. The principal questions in each case will
therefore be whether the act is broader than the title; and,
if so, then whether the other objects in the act are so intim-
ately connected with the one indicated by the title that the
portion of the act relating to them cannot be rejected, and
leave a complete and sensible enactment which is capable of
being executed." *Chiles v. Monroe,* 4 Metc. (Ky.) 72;
Cooley, Const. Lim. 148, 149; *Weaver v. Lapsley,* 43 Ala.
224; *People v. Briggs,* 50 N. Y. 566. On the other hand,
"as the Legislature may make the title to an act as restrictive
as they please, it is obvious that they may sometimes so frame
it as to *preclude* many matters being included in the act
which might, with entire propriety, have been embraced in
one enactment with the matters indicated by the title, but
which must now be excluded because the title has been made
unnecessarily restrictive. The courts *cannot* enlarge the
scope of the title. They are vested with no dispensing
power. The constitution has made the *title* the *index* to the
legislative intent as to what shall have operation. It is no
answer to say that the title might have been made more
comprehensive, if in fact the Legislature have not seen fit to
make it so." Cooley, Const. Lim. 148, 149; *Ryerson v.
Utley,* 16 Mich. 269; *People v. O'Brien,* 38 N. Y. 193.

The object and purpose of the constitutional provision
now under consideration is stated by Mr. Justice COOLEY, in
the case of *People v. Mahaney,* 13 Mich. 481, as follows:
After referring to a practice which had prevailed of bring-
ing together into one bill subjects diverse in their nature,
and saying that it was corruptive both to the legislature and
the State, he adds:

"It was scarcely more so, however, than another practice,
also intended to be remedied by the constitutional provision,

by which, through dexterous management, claims were inserted in bills of which the titles gave no intimation, and their passage secured through legislative bodies whose members were not generally aware of their intention and effect. * * * The framers of the constitution meant to put an end to legislation of the vicious character referred to, which was little less than a fraud upon the public, and to require that in every case the proposed measure should stand upon its own merits, and that the legislature should be *fairly notified* of its design when required to pass upon it."

The same views have been taken of the object and purposes of the provision in other states.   *Fishkill v. Fishkill & B. P. R. Co.*, 22 Barb. 634; *City of St. Louis v. Teifel*, 42 Mo. 578; *Hingle v. State*, 24 Ind. 28; *Prothro v. Orr*, 12 Ga. 43; *Chiles v. Monroe*, 4 Metc. 72; *People v. Commissioners of Highways*, 53 Barb. 70; *People v. Allen*, 42 N. Y. 404; *Cutlip v. Sheriff*, 3 W. Va. 588.

In the case of 53 Barb. the title of the act was "An act to *regulate* a road in the town of Palatine, Montgomery county." The object of the act was to authorize and direct the commissioners of highways of a specified town to reduce a road, then of the width of four rods, to the width of three rods. In that case Judge Potter says: "Legislative abuses, in disregard of private property, have become the standing reproach of the day.  Important encroachments upon public and individual rights, and with bold impunity of consequence, are smuggled through the legislature by acts bearing *most deceitful* or *mysterious* titles, and so *ingeniously* devised as to ward off all suspicion or inquiry, or entirely to *mislead* parties interested as to the object of the act, if, perchance, they should ever read its title.  Such considerations as these in relation to this existing evil, so frequently brought to the knowledge of the courts, imperiously call upon us, when the occasion presents itself, to look with a jealous scrutiny, that the constitution, in subordination to which all statutes are subject, shall not be encroached upon, nor its provisions contravened by legislative action."  And the court made short work of the act then being considered. He

said : " The *body* of the bill *expresses* its object; the *title disguises* and *conceals* it. It is a fraud upon the public; it is a fraud upon the constitution. The words to regulate, employed in the title, are deceptive. The subject is not honestly or fairly expressed in the title, but carefully avoided. The act was conceived in fraud, and its title designed in fraud."

With the object of the provision of the constitution, and its abuses, thus forcibly stated, and under the rules of construction applied which are apparently so well settled, we come to the act in question, for the purpose of testing its validity. Is the act in question broader than its title? The title of this act, as such title existed at the expiration of the first fifty days of the session, was, "An act to amend section five of act No. 97 of the Session Laws of 1879, as amended, being section 6539 of Howell's Annotated Statutes of Michigan of 1882, relative to filling vacancies in the Superior Court of Detroit." Really, there is no section 5 of the act of 1879. There is, however, a section 5 in the act creating the Superior Court, and it has reference to filling vacancies, and to that only, and at that time the body of the act in question related to the subject of filling vacancies in the Superior Court of Detroit. At that time, had any member of the legislature examined the bill, he would have found it unobjectionable, so far as related to its title and the body of the act being within the object stated therein. While the section of the act of 1879 was not correctly referred to, the reference to the section in Howell's Statutes was correct, and the error was not such as to vitiate the act. The intention was right, although the reference was somewhat misleading. The practice of amending statutes by reference to sections, instead of by reference to subjects, or to the entire statute, has heretofore fallen under the condemnation of this Court, as a very unsatisfactory compliance with the requirements of the constitution, and the present case only serves to justify all that has heretofore been said upon that subject. *People v. Judge of the Superior Court of Grand Rapids*, 39 Mich. 195.

This Court, it is true, may take notice of the legislative journals in determining whether or not a law has been enacted in accordance with the provisions of the constitution. From the journal of the legislature when this act was before that body, it appears it passed the house as originally presented.

It is, however, entirely unnecessary in this case. It is enough for us to know that the title to the act, as passed, purports to be, so far as it relates to any object stated therein, an act to amend the law "relative to filling vacancies in the Superior Court of Detroit," whereas the added section does not relate to filling vacancies at all, but to another and entirely different subject, viz., the subject of the jurisdiction of the court,—to the right and power of the court to transfer causes to another court. It is true, the two subjects relate to the same court, but that is not alone sufficient. Are the two germane to the object expressed in the title. Has the added section any necessary connection with the object stated in the title, or any connection with the other subject treated in the act. If not, then the bill is too broad for its title, and under no circumstances can that portion which is not covered by the title be allowed to stand. And, although both sections of the act refer in the title to the sections of Howell's Statutes, still if a subject of one is given and properly set out in the title as the object to be accomplished by both, the mischief sought to be avoided by the constitutional provision will remain in its most objectionable form, and, if not sufficient to defeat the entire act, certainly must so much thereof as is not correctly stated in the title. The object stated as it is in the title, so far as the last section of the act in question is concerned, is well calculated to deceive those whose duty it was in the legislature to defeat all such unwarranted legislation. The amendment was neither germane to the scope of the original bill as it passed the house, nor to the object expressed in its title as it was finally passed. Neither had it any necessary or reasonable connection therewith. I further regard the section of the act now under consideration as subversive, to a very great extent, of the

object had in view in creating and organizing the Superior Court of Detroit.

The body of the act, with section 21 included, is too broad for its title.

The subject treated in that section is not within the object stated in the title, and I do not think that the reference in the title to Howell's Statutes, made in the connection in which it appears, aids the infirmity, but, if it adds anything, it tends to increase the evil sought to be avoided by the constitution, by misquoting the section. In my judgment the section of the act of 1885 relating to the removal of causes from one court to the other, in the city of Detroit, and county of Wayne, is, for the reasons herein stated, unconstitutional, and of no effect, and the writ prayed for in relator's petition should be granted. No costs will be given.

The other Justices concurred.