VERNOR *v.* SECRETARY OF STATE.

1. CONSTITUTIONAL LAW—AUTOMOBILES—REGULATION.

The object and purpose of a statute for the regulation, registration, etc., of motor vehicles, cannot be changed by an amendatory act from an exercise of the police power to the exercise of the power of taxation without changing the title of the act. Act No. 181, Pub. Acts 1913.

2. SAME—TITLE—OBJECT OF ACT.

The title must embrace the object of the act and the body of the statute must not be inconsistent with the title; the requirement of the Constitution is that the title shall indicate the purpose of the legislation, that it shall be a fair index of the provisions and shall fairly inform the public of its purposes as a whole. Art. 5, § 21, Constitution.

3. SAME—MOTOR VEHICLE LAW—TAXATION.

The amendment of 1913 to the motor vehicle law, Act No. 318, Pub. Acts 1909 (2 How. Stat. [2d Ed.] §§ 2487-2504), so changes the character and purpose of the original act by providing for a system of taxation, and requiring the payment of $720,000 to $900,000 to be used for highway purposes and exempting automobiles from other assessments, etc., that the amendatory provisions are not within the title. The courts cannot enlarge the scope of the title. And it is no answer to say that the title might have been made more comprehensive if the legislature had seen fit to make it so.

4. AUTOMOBILES—TAXATION—REGULATION.

Since it imposes a license fee in excess of the cost of registering and identifying motor vehicles, and withdraws automobiles from other taxation, Act No. 181, Pub. Acts 1913, must be construed as a tax law, the fees imposed are excessive and beyond any reasonable amount that might be required as license fees, and the statute takes property from local tax rolls and subjects it to a State tax.

---

[1] On the question of the validity of license tax on automobiles, see notes in 1 L. R. A. (N. S.) 215; 21 L. R. A. (N. S.) 41; and 27 L. R. A. (N. S.) 440.

5. SAME—CONSTITUTIONAL LAW.

Nor can it be said that the legislature would have enacted the statute if motor vehicles had been left subject to an *ad valorem* tax.

6. SAME—LICENSE—STATUTORY CONSTRUCTION.

Licenses are issued under the police power; if the fee required for a license is intended for revenue its exaction is an exercise of the power of taxation. Nothing in excess of a fee which will defray the necessary expenses of supervision can be imposed under the police power, because it then becomes a revenue measure.

7. SAME—PRESUMPTIONS.

It will be presumed that the fee is reasonable, unless the contrary appears on the face of the law itself or is established by competent evidence.

Mandamus by James Vernor and another against Frederick C. Martindale, secretary of State, to compel the respondent to accept the license fee for motor vehicles required before the enactment of Act No. 181, Pub. Acts 1913. Submitted January 24, 1913. (Calendar No. 25,978.) Writ granted March 26, 1914.

*Fred A. Baker* and *Richard I. Lawson*, for relators.

*Grant Fellows*, Attorney General, *L. W. Carr*, Assistant Attorney General, for respondent.

STONE, J. The relators have petitioned this court for a writ of mandamus to compel the secretary of State to grant them licenses for their automobiles for the year 1914, under the provisions of Act No. 318 of the Public Acts of 1909 (2 How. Stat. [2d Ed.] § 2487), alleging, among other things, that Act No. 181 of the Public Acts of 1913, which is amendatory of Act No. 318, is unconstitutional and void. The suit is brought to test the constitutionality of the act of 1913.

Relators, in their petition, claim that the secretary of State should have granted their application be-

cause said amendatory Act No. 181 of the Public Acts of 1913 is unconstitutional and void for the following reasons, among others:

*(a)* That said Act No. 318 of the Public Acts of 1909 (2 How. Stat. [2d Ed.] § 2487), was designed to be and provides for a system of licensing, registration, identification, and regulation of motor vehicles upon the public highways. That Act No. 181 of the Public Acts of 1913 purports to amend said Act No. 318, and provides for a system of taxation of motor vehicles, both specific and *ad valorem,* thereby changing the entire purpose and object of the law without changing its title.

*(b)* That the title of said Act No. 181 does not disclose its object and purpose, inasmuch as the body of the act provides in certain cases an exemption from taxation of motor vehicles upon an *ad valorem* basis; whereas, the original (No. 318) act provides only for the registration, identification, and regulation of motor vehicles, and extends no further.

Act No. 318 of the Public Acts of 1909 (2 How. Stat. [2d Ed.] § 2487), bears the following title:

"An act providing for the registration, identification and regulation of motor vehicles operated upon the public highways of this State, and of the operators of such vehicles."

Act No. 181 of the Public Acts of 1913 has the following title:

"An act to amend sections two, four, five, fifteen and eighteen of act number three hundred eighteen of the Public Acts of nineteen hundred nine, entitled 'An act providing for the registration, identification and regulation of motor vehicles operated upon the public highways of this State, and of the operators of such vehicles.'"

It is the claim of relators that Act No. 318 of the Public Acts of 1909 (2 How. Stat. [2d Ed.] § 2487), was designed as a police measure merely, and pro-

vided for the registration, identification and regulation of motor vehicles upon the highways, while Act No. 181 of the Public Acts of 1913, which is amendatory of said Act No. 318, provides, in its body, for a system of taxation of motor vehicles, both specific and *ad valorem*, thereby changing the entire purpose and object of the law without changing its title; that by its terms property that was theretofore exempt, as in the case of motor vehicles owned by cities, is now taxed, and property is exempted that was theretofore taxed on an *ad valorem* basis, as is instanced in the case of all motor vehicles, except those owned by municipalities. That the legislation upon this subject before 1913 was regulatory in its nature, and was in the exercise of the police power of the State, has been recognized by this court in a number of cases. *People* v. *Dow*, 155 Mich. 115 (118 N. W. 745) ; *Johnson* v. *Sergeant*, 168 Mich. 444 (134 N. W. 468) ; *Daugherty* v. *Thomas*, 174 Mich. 371-390 (140 N. W. 615).

That such legislation cannot be changed in its object and character from the exercise of the police power to the exercise of the taxing power of the State without changing the title of the original act must, we think, be conceded.

Section 21 of article 5 of the Constitution provides as follows:

"No law shall embrace more than one object, which shall be expressed in its title."

What is the constitutional test? We think it is that a title must embrace the object of the act, and the body of the act must not be inconsistent with the title. The pertinent questions should be: Does the title of the act fairly indicate the purpose of the legislation? Is the title a fair index of the act? Does the title of the act fairly inform the legislators and the public of its purposes, as a whole?

In *Brooks* v. *Hydorn,* 76 Mich. 273, 278 (42 N. W. 1122), Justice MORSE, speaking for this court, said:

"This purpose of the constitutional direction, which has been disregarded in this act, is that the intent of the bill—its object—shall be clearly shown by its title for the benefit, not only of the members of the legislature who are to vote upon it, but also for the benefit of the State outside of the legislature, who are interested, and have a right to be, in all legislation, whether the same be general or special."

To the same point, we direct attention to the following cases:  *Callaghan* v. *Judge of Superior Court,* 59 Mich. 610-614 (26 N. W. 806) ; *Wilcox* v. *Gratiot Probate Judge,* 65 Mich. 23 (31 N. W. 609) ; *Eaton* v. *Walker,* 76 Mich. 579 (43 N. W. 638, 6 L. R. A. 102) ; *Davies* v. *Saginaw County Sup'rs,* 89 Mich. 295 (50 N. W. 862) ; *City of Grand Rapids* v. *Judge of Superior Court,* 93 Mich. 469 (53 N. W. 620) ; *In re Snyder,* 108 Mich. 48 (65 N. W. 562) ; *Fish* v. *Stockdale,* 111 Mich. 46 (69 N. W. 92) ; *City of Lansing* v. *Board of State Auditors,* 111 Mich. 327 (69 N. W. 723) ; *Blades* v. *Water Com'rs of Detroit,* 122 Mich. 366 (81 N. W. 271) ; *Citizens' Sav. Bank of Detroit* v. *Auditor General,* 123 Mich. 511 (82 N. W. 214).

It is urged by relators that the title of this act gives no indication that the whole system of taxing a large amount of personal property in the character of motor vehicles was to be changed entirely, and that property that had been theretofore taxed upon an *ad valorem* basis was to be exempted from the payment of a tax; that the titles of the original act and the amendatory act are the same, yet the bodies of the two acts are utterly, totally, and entirely distinct from each other; that the subjects are not germane to each other; that one is a taxing measure, and the other is a mere licensing or regulatory measure.

This brings us to the question:  Has the act of

1913 changed the character of the legislation from a regulatory and licensing measure to one of taxation? The original act of 1909 was an exercise of the police power of the State, and among the regulations imposed on motor vehicles and their owners and operators was the requirement that each machine should be registered, and a license for its use on the highways obtained on the payment of a fee of $3. While the word "license" is not mentioned in the title, it is repeatedly used in the body of the act, and is sufficiently covered by the words "registration, identification, and regulation" in the title.

It is the claim of the relators that the amendatory act of 1913 changes the body of the act without changing its original title, and, as the taxes imposed could not have been included in the original act, the amendatory act is invalid, citing *People* v. *Gadway*, 61 Mich. 285 (28 N. W. 101, 1 Am. St. Rep. 578) ; *People, ex rel. Stewart,* v. *Father Matthew Society,* 41 Mich. 67 (1 N. W. 931).

It is also claimed that in the construction of statutes, as well as in municipal charters, it is well settled that the power to regulate and license does not include the power to tax, although reasonable license fees (even for the purposes of revenue as a regulation) may be imposed; and the following cases are cited: *City of Saginaw* v. *Saginaw Circuit Judge,* 106 Mich. 32 (63 N. W. 985) ; *O'Hara* v. *Collier,* 173 Mich. 611 (139 N. W. 870), and cases cited.

The amendatory act expressly provides that the registration fees paid "shall exempt such motor vehicles from all other forms of taxation," with this proviso that "motor vehicles in stock or bond," in factories or garages not dealers in motor vehicles, are not to be exempt from taxes as personal property. It is urged that these provisions give character to the amendatory act, and render its invalidity a certainty,

unless the court can strike out the exemption from taxation, and leave the remaining portions of the act in force as a license law pure and simple, that this would be exercising on the part of the court legislative power, as the legislature clearly intended to exempt from other taxation, and that it cannot be said that the legislature would have passed the act with the exemption from taxation omitted, and that it is only where that which is left of the act is complete in itself, sensible, capable of being executed, and wholly independent of that which is rejected, that the act as emasculated can be sustained, citing *Callaghan* v. *Judge of Superior Court*, 59 Mich. 614 (26 N. W. 807). This court there said:

"The principal questions in each case will therefore be whether the act is broader than the title; and, if so, then whether the other objects in the act are so intimately connected with the one indicated by the title that the portion of the act relating to them cannot be rejected, and leave a complete and sensible enactment which is capable of being executed."

It is well settled that the courts cannot enlarge the scope of the title. The Constitution has made the title the index to the legislative intent as to what shall have operation. It is no answer to say that the title might have been made more comprehensive if, in fact, the legislature has not seen fit to make it so.

The amendatory act of 1913 clearly requires the payment of a sum largely in excess of what will be required for registration and regulation, and for this reason it is contended it must be regarded as a tax law. The expense to the State of furnishing the number and identification plates, and the corps of clerks and employees in the secretary of State's office in the registration of motor vehicles, the preparing and filing of lists with the county clerks, it is fair to say, will not exceed the old fee of $3. Neither of these acts imposes upon the State any other expense; no

duty of policing or patrolling the highways or supervising the use of them by motor vehicles is assumed by the State. The effect of the amendatory act is to take motor vehicles off the annual assessment rolls and tax rolls of the cities, townships, and villages of the State, and to put them on an annual registration list in the office of the secretary of State. Under the amendatory act the registration fees are charged against each motor vehicle, and exempting them from any other taxation shows that the legislature intended to tax them as articles of personal property, the taxes levied against them being in lieu, and to take the place of the taxes to which they would otherwise be subject. This, we think, is obvious and too plain for argument. The provision that automobiles not in use and held "in stock or bond" by factories and garages not dealers in motor vehicles shall not be exempt from taxation as personal property corroborates this view. We think it must be held that the amendatory act taxes as personal property the motor vehicles that are used and operated on the public highways. It makes a class of that kind of property, and the validity of the act must be determined with this basic fact in view.

The amendatory act must also be regarded as a tax law, because the claimed registration fees are excessive and beyond any sums that might be regarded as reasonable license fees. Taking this property off the local rolls, and putting it on a State roll in the office of the secretary of State, is, in our opinion, conclusive evidence that the amended act is a tax law, as distinguished from a police regulation. Can it be said that the legislature would have enacted the statute of 1913 had it left motor vehicles subject to the *ad valorem* tax? We think not. Yet the legislation can only be sustained on the theory that it would have done so.

Section 15 of the amended act reads as follows:

"All fees paid to the secretary of State as provided in this act shall be turned over to the State treasurer, and applied to the State highway fund, five per cent. of which shall constitute a fund to be used for salaries and running expenses of the State highway department, the remainder to be applied to the building and improvement of the highways of the State under such division of said fund and for such purposes as the highway laws of the State shall provide, to be paid out by the State highway commissioner in accordance with the statutory provisions therefor. Any moneys remaining in either fund at the close of any year shall be carried over by the auditor general and added to the funds which become available for the following year."

Babbitt, in his work on "The Law Applied to Motor Vehicles," § 91, says:

"The subject of 'graded' license fees applied to automobiles has aroused general interest, and in some States has been adopted as the method of computing the fee to be paid for the privilege of operation. It is therefore necessary to inquire upon what principles of law it depends and what limitations surround their application. In the outset it should appear that this form of excise is primarily for revenue, regulation being incidental. It is usual for the act creating the system to provide that the revenue derived be used for the benefit of the highways, after paying the expenses of its collection and the cost of the incidental regulation of the use of motor vehicles."

In treating the subject, that author refers to most of the cases cited and relied upon by the attorney general. We have examined the cases, and it may be said of them that no such constitutional question as we are here considering was involved in any of them. In most of the cases it appears that the *ad valorem* taxation was retained in addition to the license regulation. Were the instant case one where the auto vehicles involved were still subject to taxation upon

the assessment and tax rolls, and the sums demanded as license fees were consistent with the, idea of regulation only, in the exercise of the police power, we should have a different case before us. But we are dealing with a case where the enactment, impliedly at least, recognizes the fact that the sums imposed are for taxation, and all other taxation is prohibited.

The State of Ohio has a statute very much like our amendatory act of 1913, with the difference that it contains no exemption from other taxation. The court of common pleas in the case of *Janes* v. *Graves*,[1] 15 Ohio Nisi Prius Rep. (N. S.) 17, held the act unconstitutional on the ground that the registration fees were so high that they should be regarded as taxes on motor vehicles as personal property; and, as the law left such vehicles subject to assessment on the tax rolls, it imposed double taxation in violation of the uniformity required by the Constitution of that State. The opinion is well considered, and many authorities are there cited, to some of which we shall refer later.

In *State* v. *Lawrence* (Miss.), 61 South. 975, it was held that while, under its police power, the State has a right to regulate the use of its highways, and compel the registration and numbering of automobiles, so that they may be readily identified, and the regulations enforced, and the expenses incident to such regulation may be imposed upon automobile owners, yet the expense imposed must be a reasonable, proper, and fair exaction, when considered with reference to the object to be attained, and any unnecessary expense works a deprivation of due process, and that a statute making the driving of a car without a license tag a misdemeanor, and providing regulation fees running from $5 to $25, was invalid; it appearing

---

[1] See, also, *Janes* v. *Graves*, 15 Ohio Nisi Prius Rep. (N. S.) 193.

that the expense attached to the licensing of such car would not exceed $1.

It is stated by relators, in their brief, that under the 1909 act, requiring the payment of $3 for each motor vehicle, there were 54,000 motor vehicles registered in 1913, producing $162,000; that in 1914 not less than 60,000 motor vehicles will be registered, if the statute is held valid; and that, at the very low average of $12 each, will produce $720,000, and that, at the more probable average of $15 each, the sum of $900,000 will be produced. We have no definite figures before us in this record; but it may be safely said that the sums imposed by the act will reach far beyond any limit of reasonableness of regulation that has ever been sustained by this court.

A license is issued under the police power of the authority which grants it. If the fee required for the license is intended for revenue, its exaction is an exercise of the power of taxation. *State* v. *Hipp,* 38 Ohio St. 199.

In some cases courts have taken notice without proof that the fee exacted was unreasonable. For instance, in *North Hudson County R. Co.* v. *Mayor,* 41 N. J. Law, 71, the court declared, as a matter of law, that a fee of $15 for each one-horse car, and $25 for each two-horse car, was unreasonable.

To be sustained, the act we are here considering must be held to be one for regulation only, and not as a means primarily of producing revenue. Such a measure will be upheld by the courts when plainly intended as a police regulation, and the revenue derived therefrom is not disproportionate to the cost of issuing the license, and the regulation of the business to which it applies. *Littlefield* v. *State,* 42 Neb. 223 (60 N. W. 724, 28 L. R. A. 588, 47 Am. St. Rep. 697); Berry's Law of Automobiles, § 84, and cases cited; *Van Hook* v. *City of Selma,* 70 Ala. 361 (45

Am. Rep. 85); *Price* v. *People*, 193 Ill. 114 (61 N. E. 844, 55 L. R. A. 588, 86 Am. St. Rep. 306); *Baker* v. *City of Cincinnati*, 11 Ohio St. 534.

Anything in excess of an amount which will defray such necessary expense cannot be imposed under the police power, because it then becomes a revenue measure. *In re Guerrero*, 69 Cal. 88 (10 Pac. 261); *Schmidt* v. *City of Indianapolis*, 168 Ind. 631 (80 N. E. 632, 14 L. R. A. [N. S.] 787, 120 Am. St. Rep. 385); *Kansas City* v. *Grush*, 151 Mo. 128 (52 S. W. 286); *City of New York* v. *Railroad Co.*, 32 N. Y. 261.

It is true that it has been held that what is a reasonable fee must depend largely upon the sound discretion of the legislature, having reference to all the circumstances and necessities of the case. It will be presumed that the amount of the fee is reasonable, unless the contrary appears upon the face of the law itself, or is established by proper evidence. 2 Cooley on Taxation (3d Ed.), p. 1138; *Gamble* v. *City Council of Montgomery*, 147 Ala. 682 (39 South. 353); *Atkins* v. *Phillips*, 26 Fla. 281 (8 South. 429, 10 L. R. A. 158); *Spiegler* v. *City of Chicago*, 216 Ill. 114 (74 N. E. 718); *Iowa City* v. *Newell*, 115 Iowa, 55 (87 N. W. 739); *State* v. *Snowman*, 94 Me. 99 (46 Atl. 815, 50 L. R. A. 544, 80 Am. St. Rep. 380); *Willis* v. *Standard Oil Co.*, 50 Minn. 290 (52 N. W. 652); *Littlefield* v. *State, supra*.

In determining whether a fee required for a license is excessive or not, the absence or amount of regulatory provisions and the nature of the subject of regulation should be considered, and, if the amount is wholly out of proportion to the expense involved, it will be declared a tax. Berry's Law of Automobiles, § 84; *Ex parte Braun*, 141 Cal. 204, 206 (74 Pac. 780). If revenue is incidentally derived which is not so disproportionate as to make the fee charged unreasonable, there can be no objection. Berry's Law

of Automobiles, § 86, and cases there cited; *State* v. *Hudson*, 78 Mo. 302.

There are cases holding that, where the law expressly directs that the fund derived from the license fee shall be used for purposes other than defraying the expenses of issuing the license and of regulation, it thereby makes of the fee a tax, and converts what was intended to be a police measure into a revenue law. Berry's Law of Automobiles, § 87; *City of Chicago* v. *Collins*, 175 Ill. 445 (51 N. E. 907, 49 L. R. A. 408, 67 Am. St. Rep. 224); *Livingston* v. *City of Paducah*, 80 Ky. 656; *Ellis* v. *Frazier*, 38 Or. 462 (63 Pac. 642, 53 L. R. A. 454). But the better rule seems to be that the disposition of the fee will not alone determine whether it is a license or a tax. If, upon investigation, the fee is found to be only sufficient to pay the expense that may reasonably be presumed to arise in the supervision and regulation of the automobile licensed, its disposition should not have the effect of converting it into a tax. *State* v. *Hudson, supra.*

The act we are considering provides for no policing or police regulation. The expense of operating the department, including the furnishing of the lists of owners to the county clerks, will be so inconsiderable, compared with the amount collected, that we must take judicial notice that the great amount of surplus (probably more than half a million dollars) renders the imposition of the license fee or tax so wholly and palpably unreasonable as to invalidate the law as a license measure, and to stamp upon it the intention of imposing a tax instead of a license. The clear purpose of the legislature in exacting so large an amount from the owners of automobiles was to produce a fund for highway purposes under the guise of regulation, which makes it a tax measure which clearly is not covered by the title of the act. The obvious

purpose of the amendment in the act of 1913, increasing the fees according to horse power, was to increase that fund. There can be no more labor or expense in registering a vehicle of high horse power than in registering one of low power, and the only reasonable purpose in the graduated fee is the increased revenue. This graduated fee according to horse power must be held to be a mere guise or subterfuge to obtain the increased revenue. The real and controlling purpose of the legislation of 1913, in our opinion, appears on its face, and is found in section 15, above quoted. In our opinion the act is clearly a tax measure when stripped of its guise, and as a tax measure the object is not embraced in the title, and for that reason alone is unconstitutional.

It is sufficient to dispose of this case to hold that the title of the original act, retained by the amendatory act, contains no indication that the act is to make provisions for the taxation of motor vehicles, other than the regulative fees which may be imposed under the police power. We must therefore hold the act unconstitutional upon this ground alone, which renders it unnecessary for us to consider the further grounds urged.

The mandamus should issue as prayed for in the petition, and, as the question is a new and public one, no costs will be imposed upon either party.

MCALVAY, C. J., and BROOKE, OSTRANDER, MOORE, and STEERE, JJ., concurred. BIRD and KUHN, JJ., concurred in the result.