CHARLES E. EATON v. CHARLES H. WALKER, MARK HOPKINS, JR., AND WILLIAM LIVINGSTONE, JR.

*Constitutional law—Title of act—Mercantile corporations—Corpora tion de facto—Evidence—Findings of fact—Partnership.*

1. The constitutional provision that "no law shall embrace more than one object, which shall be expressed in its title," is violated if an act is amended so as to embrace a purpose outside of its title, and inconsistent with provisions remaining unrepealed.

2. Act No. 274, Laws of 1881, which seeks to amend Act No. 187, Laws of 1875, so as to include *mercantile* business, introduces matters not embraced in the purposes indicated in the title to the act sought to be amended, and is therefore void.

3. A corporation *de facto* cannot exist in the absence of a law authorizing its organization, and in such a case the carrying on of the business in the corporate name is no evidence of *user* which can be considered in aid of corporate existence.

4. Where an attempt has been made to organize a corporation under a *valid* act, and the question is one of *regularity* merely, parties recognizing its legal corporate existence by dealing with it have no right to object to any *irregularity* in such organization.

5. In a case involving the question of whether plaintiff had dealt with defendants as a corporation or as a partnership, a finding of fact that he had full knowledge that they were a corporation, and dealt with them as such, is not supported by testimony of the publication by defendants of statements showing such incorporation, and the mailing to plaintiff of letters and circulars showing such fact, which were not shown to have been received; the court

having excluded the testimony of the plaintiff negativing his knowledge or information of such corporate existence or claim, which exclusion was error.

6. Parties associating together 'in the organization of a corporation under a *void* law, and sharing the profits and losses of the business equally, according to the money each put in as capital stock, of which they were equal owners, are liable to parties dealing with them as copartners, notwithstanding they acted in good faith and under the advice of counsel.

Error to Wayne. (Brevoort, J.) Argued June 14, 1889. Decided October 18, 1889.

*Assumpsit.* Plaintiff brings error. Reversed. The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*Henry M. Duffield,* for appellant.

*Dickinson, Thurber & Stevenson,* for defendants.

*F. H. Canfield,* of counsel for defendant Livingstone.

LONG, J. Plaintiff, in the year 1883, was a dealer in grain and produce, residing at Mason, in this State. Defendants were the sole parties interested in a business of buying and selling grain and provisions for immediate and future delivery for themselves and other persons on commission at Detroit, and were members of the Board of Trade of Detroit.

This action is brought upon an account stated by defendants to plaintiff in the sum of $3,562.68. The account was erroneously made out in the name of the firm of Walker, Summer & Co., with whom plaintiff had formerly done business, and of whom Mr. Walker was at that time a member.

No question was made on the trial as to the amount due the plaintiff from Walker, Hopkins & Co., but the defense

rested on the single ground that Walker, Hopkins & Co. were a corporation, and not liable as individuals.

The cause was tried before the court without a jury, and the court made the following finding of facts and conclusions of law:

"1. On the third day of May, A. D. 1882, the defendants organized a corporation under the name of Walker, Hopkins & Co. by executing articles of association, and having the same duly filed in the offices of the clerk for the county of Wayne and the Secretary of State for the State of Michigan. The object of such corporation, as described in such articles of association, was 'to carry on mercantile business in buying and selling grain for immediate or future delivery.'

"2. This corporation assumed to organize under Act No. 187 of the Session Laws of 1875, as amended by Act No. 274 of the Session Laws of 1881. The capital stock of the corporation was fixed at $50,000; each of the defendants subscribing for an equal portion of the same.

"3. The defendants Livingstone and Hopkins paid for their stock. The defendant Livingstone, on the sixth day of May, A. D. 1882, paid $10,000 on account of his stock; on the nineteenth day of May, $1,675; on the twenty-ninth day of May, $1,000; first day of June, $1,000; on the twelfth day of July, $325; on the ninth day of June, 1883, $1,000; and on the twenty-fifth day of July, 1883, $1,675. The defendant Hopkins paid for his stock in cash at or about the time of the organization of the said corporation.

"4. Prior to the organization of this corporation, a copartnership, of which the defendant Charles H. Walker was one of the copartners, conducted a business in buying and selling grain, and doing a general commission business, under the name of Walker, Summer & Co. Neither the defendant Hopkins nor the defendant Livingstone was connected with this copartnership. Prior to the organization of the corporation of Walker, Hopkins & Co., the defendant Walker purchased all of the assets of the firm of Walker, Summer & Co., and transferred such assets to Walker, Hopkins & Co.; an agreement being executed between the defendant Walker, and Walker, Hopkins & Co., providing, in effect, that the stock of the defendant Walker should be paid for out of collections to be made out of the assets thus transferred to Walker, Hopkins & Co.; but it does not appear that collections to any considerable amount were ever made upon the assets thus

transferred to Walker, Hopkins & Co., or that the stock of the defendant Walker was ever paid for.

"5. Soon after the organization of the corporation of Walker, Hopkins & Co., as above stated, it commenced to do business as a corporation in buying and selling grain and provisions for immediate or future delivery; the defendant Mark Hopkins, Jr., having been elected president of the corporation, and defendant Walker secretary and treasurer, and defendant Livingstone vice-president. The three defendants herein were elected a board of directors, and records of the meetings of such corporation were duly kept, a corporate seal had and used, and regular stock certificates issued, and the fact of its incorporation duly announced through the public press and by circular. Such business was continued by said Walker, Hopkins & Co., as such corporation, till the twenty-seventh day of July, 1883, when it made an assignment for the benefit of its creditors to Charles M. Swift as assignee, who qualified as such assignee, and executed the trust under such assignment so made by said corporation.

"6. The business of said corporation during the time it so conducted said business was managed by the defendants Hopkins and Walker as president and secretary and treasurer of said corporation. The defendant Livingstone took no part in the transaction of the ordinary business of the corporation.

"7. The plaintiff, who had been a customer of the firm of Walker, Summer & Co., upon the organization of the corporation of Walker, Hopkins & Co., continued to do business with it, as he had done business with Walker, Summer & Co., prior to the organization of the corporation of Walker, Hopkins & Co.

"8. At the date of the execution of the assignment aforesaid, Walker, Hopkins & Co. was indebted to the plaintiff in the sum of $3,562.68.

"9. At the time that said Walker, Hopkins & Co. commenced business as aforesaid, and during the time it continued to do business, the plaintiff had full notice that Walker, Hopkins & Co. was a corporation and not a copartnership, and he continued to do business with said Walker, Hopkins & Co. as such corporation.

"10. That the plaintiff transacted his business with Walker, Hopkins & Co. as a corporation, and the indebtedness sued for herein was contracted while said plaintiff was dealing with said Walker, Hopkins & Co. as such corporation.

"11. The defendant Livingstone became a party to the organization of said corporation of Walker, Hopkins & Co., and a subscriber to its stock, in entire good faith, and all his dealings had with said corporation were had in good faith, and he never after the organization of said corporation received, directly or indirectly, any benefit therefrom by way of return of stock subscribed and paid for, or dividends thereon, and never, at any time while said corporation continued to do business, had any suspicion that the organization of said corporation was in anywise defective.

## "CONCLUSIONS OF LAW.

"a—Whether Act No. 274 of the Session Laws of 1881, under which the corporation of Walker, Hopkins & Co. assumed to organize, was a valid law or not, by reason of the alleged defect or imperfection in its title, the plaintiff is not entitled to recover in this cause. The defendant Livingstone having acted in good faith with reference to the organization of said corporation and the transaction of its business, and the plaintiff having dealt with it as a corporation, he is now estopped to question the validity of its incorporation.

"b—The defendants are entitled to a judgment in this case."

The court subsequently filed the following conclusions:

"From these facts, as found, I am clearly of the opinion that Walker, Hopkins & Co., with whom the plaintiff dealt, and by whom the account was rendered, was a corporation de facto, if not de jure, and that the plaintiff knew that Walker, Hopkins & Co. was a corporation.

"He never dealt with them as partners,   *   *   *   and under the weight of authority I think that the plaintiff is estopped to deny that Walker, Hopkins & Co. was a corporation, or to claim that the defendants, who were stockholders therein, are liable as partners."

Judgment was entered upon these findings in favor of defendants. Plaintiff brings the case to this Court.

The defendants claim to be incorporated under Act No. 187 of the Public Acts of Michigan of 1875. The title of this act is—

"An act for the incorporation of manufacturing companies."

The first section provides that any number of persons, not less than three, who shall associate, according to the provisions of the act,—

"For the purpose of engaging in and carrying on any kind of manufacturing business, and who shall comply with all the provisions of this act, shall, with their successors and assigns, constitute a body politic and corporate under the name assumed by them in their articles of association."

This section was amended by Act No. 274, Pub. Acts of 1881, so as to read,—

"For the purpose of engaging in and carrying on any kind of manufacturing or mercantile business, or any union of the two."

The act in other respects was unchanged.

The title of the amending act is—

"An act to amend section one of an act entitled 'An act for the incorporation of manufacturing companies,' approved May 1, 1875, being Act No. 187 of the Laws of 1875, so as to include mercantile business."

The title of the act of 1875 remains unchanged, and only provides for the incorporation of manufacturing companies. The act of 1881 provides for the incorporation of companies to carry on a mercantile business, a business entirely foreign to the act of 1875, which it purports to amend, and therefore introducing matters not embraced in the purposes indicated in the title to the act amended.    Section 20, Art. 4, of the Constitution provides that—

"No law shall embrace more than one object, which shall be expressed in its title."

This attempt to incorporate a new business into the act of 1875 by the amendment of 1881 falls plainly within the prohibition of this section of article 4 of the Constitution.   The amendment is, in effect, an independent statute, and provides for the incorporation of companies that are not mentioned or provided for by the act of 1875.

As was said by this Court in *Stewart v. Father Matthew Society*, 41 Mich. 67 (1 N. W. Rep. 931),—

"No one can hesitate to see that the purpose of the statute of 1867 was to introduce an entirely new object of legislation, foreign to the existing statute, and incapable by the most liberal construction of falling within its terms."

The constitutional provision that "no law shall embrace more than one object, which shall be expressed in its title," is violated if an act is amended so as to embrace a purpose outside of its title, and inconsistent with provisions remaining unrepealed. As amended, this statute plainly covers objects having no necessary connection, and is therefore void.

Therefore there was no statute under which defendants could lawfully incorporate as a mercantile company, and their acts as such are wholly void.

Defendants' counsel, however, insist that Walker, Hopkins & Co. were a corporation *de facto*, if not *de jure*.

But, there being no valid law of this State under which the defendants could legally be incorporated, could they, even colorably, become a corporation, or have any existence as a corporation *de facto*, or would the plaintiff be estopped from inquiry into their corporate existence under such circumstances?

Two things are necessary to be shown in order to establish a corporation *de facto*, viz. :

1. The existence of a charter or some law under which a corporation, with the powers assumed, might lawfully be created.

2. A user by the party to the suit of the rights claimed to be conferred by such charter or law. *U. S. Bank v. Stearns*, 15 Wend. 314.

If the law exists, and the record exhibits a *bona fide* attempt to organize under it, very slight evidence of user beyond this is all that can be required. *M. E. Church v. Pickett*, 19 N. Y. 487.

In *Heaston v. Cincinnati, etc., R. R. Co.*, 16 Ind. 275, the court says:

"The estoppel goes to the mere *de facto* organization; not to the question of legal authority to make an organization. A *de facto* corporation, that by regularity of organization might be one *de jure*, can sue and be sued. And a person who contracts with such corporation while it is acting under its *de facto* organization—who contracts with it as an organized corporation—is estopped, in a suit on such contract, to deny its *de facto* organization at the date of the contract; but this does not extend to the question of legal power to organize. Hence, if an organization is completed where there is no law, or an unconstitutional law, authorizing an organization as a corporation, the doctrine of estoppel does not apply."

The same rule was laid down by implication by this Court in *Swartwout v. Mich. Air Line R. R. Co.*, 24 Mich. 393, as follows:

"Where there is thus a corporation *de facto*, with no want of legislative power to its due and legal existence; where it is proceeding in the performance of corporate functions, and the public are dealing with it on the supposition that it is what it professes to be; and the questions suggested are only whether there has been exact regularity and strict compliance with the provisions of the law relating to incorporation, —it is plainly a dictate, alike of justice and of public policy, that in controversies between the *de facto* corporation and those who have entered into contract relations with it, as corporators or otherwise, such questions should not be suffered to be raised."

And again it was said:

"But both in reason and on authority the ruling should be the same where an attempt has been made to organize a corporation under a general law permitting it. If due authority existed for the organization, and the question is one of regularity merely, 'the rule established by law, as well as reason, is that parties recognizing the existence of corporations by dealing with them have no right to object to any irregularity in their organization.'"

In the present case, however, there was no law authorizing

the parties to file their articles of association, or to become incorporated; and there could, under such circumstances, be no corporation *de facto*. It cannot, therefore, in any proper legal sense, be said that the carrying on of the business in the corporate name is evidence of user which can be considered in aid of their legal corporate existence.

Counsel for the defendants contend that the case of *Merchants', etc., Bank v. Stone*, 38 Mich. 779, is decisive of this case. In that case the defendants claimed to be incorporated as the "Charles Stone Timber Company." It appeared that the plaintiff transacted a large amount of business with the defendants, upon the specific understanding that the concern was contracting as a corporation, and not otherwise; and this Court said:

"Now, the proof that, as a matter of fact, the company carried on business as a corporation in the name of 'The Charles Stone Timber Company' when the bank dealt with it, established, *prima facie*, that it was a corporation pursuant to law; and certainly the evidence the bank adduced in regard to the operations of the company, the attitude it maintained, and the character in which the two concerns dealt together, showed that the company was a corporation *de facto*, and so acknowledged by the bank."

In the present case the plaintiff offered evidence to show that he never knew, or had any information, that the defendants claimed that Walker, Hopkins & Co. were a corporation, but, on the contrary, that Mr. Walker, of that firm, asked him to continue his business with the firm as he had carried it on formerly with Walker, Summer & Co., and that the firm was composed of himself, William Livingstone, Jr., and Mark Hopkins, Jr.; and that he always believed and understood that Walker, Hopkins & Co. were a firm. This testimony the court below excluded. In addition to this, and upon this point, this case differs radically from the case of *Merchants', etc., Bank v. Stone*. The whole facts show that the firm never had any corporate existence, and never was a corpora-

tion, even *de facto*. It is very evident to us that the facts here presented do not bring this case within the ruling of the former case.

In the present case, as in that, the name would not indicate that the firm was a corporation. It gave no clue to the nature of the company as being corporated or unincorporated, and there is no pretense of proof that the plaintiff dealt with it as a corporation, except the fact that defendants were doing business as a corporation, and had published such fact in two of the Detroit papers, and mailed circulars to their customers announcing that they had organized as a corporation under the laws of the State of Michigan, and also that their letter-heads showed this fact; some of the circulars being mailed to plaintiff, and the corporation having also sent by mail statements of its accounts to plaintiff written upon such letter-heads.

The plaintiff testified that he had no recollection of receiving such circulars, or of ever having seen such announcements in the public press. Plaintiff also testified that he had no recollection of ever having received any letter-heads containing the information that defendants were a corporation; and it appears that when the account was made up by defendants showing their indebtedness to plaintiff, and transmitted to him, it was upon the letter-head of Walker, Summer & Co., which did not contain any showing that Walker, Hopkins & Co. were a corporation.

Plaintiff's counsel also offered to show by the testimony of the plaintiff that Mr. Walker solicited the plaintiff to do business with Walker, Hopkins & Co., stating to him that it was a partnership composed of Walker, Livingstone, and Mark Hopkins, Jr., and that in the faith of that statement the plaintiff commenced business with them. This testimony the court excluded.

Defendants' counsel, however, contend that inasmuch as the trial court found as a fact that Walker, Hopkins & Co.

were a corporation, and that, during the time it continued to do business, plaintiff had full knowledge that they were a corporation, and not a copartnership, and continued to do business with them as a corporation, such finding is conclusive, and will not be disturbed by this Court.

It would be true that, if there was any proof to support the finding, this Court would be bound by it, though, upon the facts, it might not be able to agree with the circuit court in its conclusions. But the fact is made to appear, by the evidence returned, that the court excluded the evidence of the plaintiff that he did not know that they were a corporation, and did not deal with them as such, but was informed by Walker that they were a partnership, and dealt with them in the belief that they were a partnership; and yet the court below finds, under the evidence which defendants were permitted to offer, that plaintiff did deal with them as a corporation, and had full knowledge that they were such, and bases such finding and conclusion upon the fact that defendants published the statements in the public press, and mailed circulars and letter-heads to plaintiff which it is not shown that he ever received. Under such circumstances, the court was in error in excluding the testimony, and we think there is no proof to sustain the finding.

It is undoubtedly well settled that a person who has entered into contract relations with a *de facto* corporation cannot, in an action thereon, deny its corporate character, or set up any informality in its organization, to defeat the action. The distinction between such cases and the present one is to my mind clear.

If there had been any law under which defendants had a right to incorporate, and the offer had been to show a mere abuse or excess of its corporate powers, or had it appeared that it was a *de facto* corporation, and the question related to the regularity of its organization merely, there could be no doubt that the plaintiff would be estopped from questioning its corporate existence.

But the two things necessary to show a corporation, even *de facto*, do not exist. There is no law under which the powers they assume might lawfully be created; and the mere fact that they assumed to act as such, even in the full belief that they were legally incorporated, would not constitute them a corporation *de facto*.

It is admitted upon this record that an indebtedness was due to the plaintiff in the sum of $3,562.68 at the date of the trial, July 19, 1888, and plaintiff seeks to hold defendants liable therefor as partners, and in this contention we think he is right. The defendants were not a corporation. They had associated together, each sharing the profits and losses of the business equally, according to the money each put in as capital stock, each holding and owning one-third part of the shares. The fact that they took counsel and acted in good faith in organizing under what they were advised was a valid law does not relieve them of their liability. It is well settled that obligors are bound, not by the style which they give to themselves, but by the consequences which they incur by reason of their acts. They have had the benefit of the plaintiff's means; they are indebted to him, as is conceded; but have sought to shift individual liability to a corporate one. There is no such corporation, and the mere fact that defendants assumed to act as such does not relieve them from personal liability.

Under the circumstances of this case, the defendants must be held liable as partners. The judgment of the court below must be set aside and vacated, and judgment entered here in favor of plaintiff in the sum of $3,562.68, with interest from July 27, 1883, being the date when the parties, claiming to be a corporation, made an assignment for the benefit of their creditors, together with costs of both this and the circuit court.

CHAMPLIN and CAMPBELL, JJ., concurred. SHERWOOD, C. J., and MORSE, J., did not sit.