## DAVIS et al. v. STEVENS et al.

(District Court, D. South Dakota, S. D. October 11, 1900.)

1. CORPORATIONS—REQUISITES OF DE FACTO CORPORATION.

There cannot be a corporation de facto where such corporation could not exist de jure.

2. SAME—UNAUTHORIZED ASSUMPTION OF CORPORATE FRANCHISE—BANKS UNDER DAKOTA STATUTE.

Comp. Laws Dak. § 2892, which provides that "the due incorporation of any company claiming in good faith to be a corporation under this chapter and doing business as such, or its right to exercise corporate powers, shall not be inquired into collaterally in any private suit to which such de facto corporation may be a party," is merely declaratory of the law as it previously existed, and applies only to de facto corporations. There having been no law of the territory of Dakota under which a corporation could be formed for banking purposes, an attempted incorporation for that purpose under the laws of the territory is not within the protection of such provision, and the incorporators may be charged as partners on legal contracts made in the name of such pretended corporation.

3. BANKRUPTCY—PARTNERSHIP—ILLEGAL INCORPORATION.

An association of persons claiming to incorporate as a bank under the laws of the territory of Dakota, by which such corporations were not authorized, and which has conducted business as a bank since then, under the corporate name assumed, may be held subject to the provisions of Bankr. Act 1898, as a partnership.

4. SAME—ACTS OF BANKRUPTCY—CONSENT TO APPOINTMENT OF RECEIVER.

The consent of a partnership, although insolvent, to the appointment of a receiver for its property by a state court, and the surrender of its property to such receiver, do not constitute an act of bankruptcy, under Bankr. Act 1898, where it is not shown that any creditor thereby obtained preference over another.

5. SAME—INSOLVENCY—PARTNERSHIP.

To constitute insolvency of a partnership, within the meaning of Bankr. Act 1898, the property of the firm, together with that of all the partners applicable to the partnership debts, must be insufficient to pay such debts.

In Bankruptcy. Hearing on petition in involuntary bankruptcy.

J. L. Hannett, for petitioners.

Bailey & Voorhees, for defendant Charles A. Johnson.

T. B. McMartin, for defendants Julius D. Bartow, Harns G. Baker, Francis Gould Fox, M. S. Cook, and Halo B. Stevens.

CARLAND, District Judge. On March 21, 1900, John Davis, Wayne Mason, and William C. Harris, who are creditors of the Bank of Plankinton in a sum exceeding $500, and who are citizens of the state of South Dakota, filed a petition in this court praying that the Bank of Plankinton be adjudged bankrupt, as a private banking institution, and a co-partnership consisting of the above-named defendants. In due time all of the above defendants answered said petition, except the defendant Fred L. Stevens, who, after due service, has not appeared in this action. In their answer defendants deny generally the allegations of the petition, and, further answering, allege that the Bank of Plankinton was during the times alleged in the petition, and now is, a corporation duly organized under the laws of the territory of Dakota and the state of South Dakota. The defendant Charles A. Johnson admits that he was a stockholder in said corporation prior to May, 1898, but on the 9th day of May in said year he sold and transferred all his stock and interest in said corporation, and since said time has had no connection with the business of said corporation. The defendant Bartow admits that he owned one share of stock in said corporation, but sold it on or about the month of June, 1899. The defendant Francis G. Fox is shown by the testimony to have been a stockholder in the corporation for about 10 years last past. It appears from the testimony and admission of the parties to this proceeding that the petitioners are creditors of the Bank of Plankinton in a sum exceeding $500, and that on the 27th day of November, 1885, articles of incorporation, duly signed and acknowledged by Edwin S. Rowley, Fred L. Stevens, Charles A. Johnson, Joseph D. McCormick, and William M. Smith, were duly filed in the office of the secretary of the territory of Dakota, wherein it was stated that the business of the proposed corporation, which was to be called the Bank of Plankinton, should be a general banking, real-estate, and loan business. Upon the filing of said articles there was issued by

the secretary of the territory of Dakota a certificate of corporate existence to the parties above named, wherein it was certified that said parties, their associates and successors, had become a body politic and corporate under the corporate name of Bank of Plankinton, and by that name had a right to sue and be sued, purchase, hold, and convey real and personal property, and to have and enjoy all the rights and privileges granted to a private corporation under the laws of this territory, subject to their articles of incorporation, and all legal restrictions and liabilities in relation thereto. It further appears from the testimony and the pleadings in the case that the Bank of Plankinton did business as a banking corporation from the time of its alleged incorporation until on or about the 10th day of January, 1900, when it closed its doors and ceased to do business; the business of the bank being transacted at Plankinton, Aurora county, in this state. It is claimed by the petitioners that, as there was no law of the territory of Dakota which authorized the incorporation of individuals to do a banking business, the defendants in this proceeding, who are alleged to have owned stock in this corporation, were simply partners, and as such were doing business as a private bank, and thus subject to be adjudicated a bankrupt as a private bank. It is contended by the defendants that whether or not the Bank of Plankinton was a corporation cannot be inquired into collaterally, and that the state of South Dakota is the only power which could, by proceedings in the nature of a quo warranto, inquire into the legal organization of this corporation. If the Bank of Plankinton was a de facto corporation, this position would be unassailable. But, in order that there may be a de facto corporation, it must have been possible for the territory of Dakota to have chartered a de jure corporation, and as there was no law of the territory of Dakota permitting the incorporation of banking corporations at the time the Bank of Plankinton received its certificate of corporate existence, it results that there cannot be a de facto corporation. The limitation of the doctrine that the validity of corporate existence cannot be litigated collaterally is that, where there is no law under which a corporation might exist, then the validity of corporate existence may be attacked collaterally. Heaston v. Railroad Co., 16 Ind. 275; Krutz v. Town Co., 20 Kan. 397; Eaton v. Walker, 76 Mich. 579, 43 N. W. 638, 6 L. R. A. 102; 1 Thomp. Corp. § 505. As is said in section 502, 1 Thomp. Corp.:

"We must not get too far away from the primal proposition that the legislature alone can create a corporation, and that a collection of individuals cannot make themselves a corporation by merely resolving to be such, or calling themselves such. The three tailors of Tooley street did not make themselves the people of England by passing a resolution in which they styled themselves such. There must be some basis for the operation of the rule, and accordingly we find a better statement of it in the proposition that where a corporation exists de facto, and in fact exercises corporate powers, the question whether it exercises such powers lawfully cannot be litigated in a collateral proceeding between private parties, or between a private party and the corporation. The question can only be litigated between the corporation and the state."

Defendants invoke section 2892 of the Compiled Laws of Dakota, which is in the following language:

"The due incorporation of any company claiming in good faith to be a corporation under this chapter and doing business as such, or its right to

exercise corporate powers, shall not be inquired into collaterally in any private suit to which such de facto corporation may be a party, but such inquiry may be had and action brought at the suit of the territory in the manner prescribed in the Code of Civil Procedure."

This section, as I understand it, simply declares the law in the same manner that the courts declare it. It presupposes that there is a de facto corporation, which cannot exist if there could have existed no de jure corporation. In the case of Oroville & V. R. Co. v. Supervisors of Plumas Co., 37 Cal. 354, it was held by the supreme court of California that a similar provision in the laws of that state did not go to the extent of precluding private persons from denying the existence de jure or de facto of the alleged corporation. In section 506, 1 Thomp. Corp., it is stated:

"The simple and true view is that if men undertake to form themselves into a business company which the state cannot recognize as a corporation, or which is even forbidden by the state, and in that character contract debts which would be valid and enforceable if contracted by individuals, the courts of justice should hold them liable as partners. It is intolerable that A., B. & C., by merely assuming a corporate name and pretending to be a corporation, can incur with innocent members of the public obligations which would be valid if incurred by them individually, and then escape liability because the law forbids them to act as a corporation in the incurring of such obligations. A simple rule, and one which should apply to all cases, is that, where the obligations of a pretended corporation are neither inequitable nor immoral, the judicial courts should enforce them against the corporations as partners. So to do would be strictly consonant with public policy, because, if business adventurers learn that, unless their corporate organization is lawful and valid, they are liable as partners, this will deter them from attempting to form illegal or prohibited corporations."

As the claims of the creditors who are petitioners in this action arise from simply depositing money with the Bank of Plankinton, there is no such relation between the bank and the creditors as would allow the principle of estoppel to be urged. I, therefore, am of the opinion that the parties interested in the Bank of Plankinton were co-partners. If this be so, the next duty devolving upon the court is to ascertain who those parties were, and, after a careful consideration of all the testimony in the case, the court is satisfied that the truth about who was interested in said co-partnership cannot be ascertained from said testimony. The only parties that the court has any legal evidence upon which to find that they were interested in the co-partnership are Fred L. Stevens, one of the original incorporators, and Francis Gould Fox. But, as the petition in this case must be dismissed for other reasons, I leave the consideration of the unsatisfactory testimony in regard to who were really partners. It is alleged in the petition that the alleged co-partnership did commit acts of bankruptcy, as follows:

First. "That on the 9th day of January, 1900, said co-partnership, the Bank of Plankinton, closed the doors of said bank, and suspended business, and refused to pay its depositors any part of the money deposited by them with said co-partnership, the Bank of Plankinton, and that said co-partnership on said day ceased to do a banking business in said city of Plankinton, and also ceased on said day to do any business of any kind or character in said city of Plankinton, in said district."

The evidence shows this allegation to be true, but it constituted no act of bankruptcy. It might be evidence of insolvency, but the mere fact that an individual or a co-partnership refuses to pay his or its debts is not an act of bankruptcy.

Second. "And, for a further act of bankruptcy, your petitioners represent that said co-partnership, the Bank of Plankinton, fraudulently and for the purpose of hindering and delaying its creditors, has sold and disposed of a part of its property; said partnership being then insolvent."

It is not alleged that the sale and disposal of the property occurred within four months prior to the filing of the petition in this action, and, even if it did so allege, there has been no proof offered of the truth of the allegation.

Third. "And, for a further act of bankruptcy, your petitioners represent that said co-partnership, the Bank of Plankinton, at Plankinton, in said district, did, for the purpose of defrauding, hindering, and delaying its creditors, and within four months next preceding the filing of this petition, secrete and conceal a large part of its property."

This allegation is wholly unproved. It is true that the books of the bank, at the time the bank failed, showed that there ought to be in possession of the bank more cash on account of individual deposits than was actually found; but whether this money was lost within four months or a year, or two or three years, prior to the filing of the petition, is not proved. There is no proof whatever that the bank secreted and concealed it. If the court has to indulge in any presumption, it must indulge in the presumption that it was lost through bad management, poor speculation, and not that it was fraudulently disposed of.

Fourth. "And, for a further act of bankruptcy, your petitioners allege that on or about the 6th day of January, 1900, Fred L. Stevens, the active and managing partner of said co-partnership, the Bank of Plankinton, with intent to hinder, delay, and defraud the creditors of said co-partnership, the Bank of Plankinton, absconded from the state of South Dakota, taking with him several thousand dollars belonging to said co-partnership, and that the said Fred L. Stevens still keeps himself concealed outside of said state of South Dakota; that the fraudulent acts of the said Fred L. Stevens were known to the said partners, or a majority of them, as these petitioners verily believe, or the same could have been known by the said partners by the exercise of ordinary care and diligence on their part."

This states no act of bankruptcy, and is not shown by any testimony to be true. The fact that one partner of a co-partnership embezzles the funds of a co-partnership, and absconds and conceals himself, constitutes no act of bankruptcy of that partnership. In this connection it must be stated that all these acts of bankruptcy heretofore mentioned must have been while the bank was insolvent, and there is no proof of the insolvency of the bank, other than at the time it closed its doors.

Fifth. "And, for a further act of bankruptcy, your petitioners represent that at the city of Plankinton, in said county of Aurora, in said district, on or about the 11th day of January, 1900, the said co-partnership, the Bank of Plankinton, then being insolvent, suffered and permitted certain creditors of said co-partnership, the Bank of Plankinton, namely, Warren Dye, Samuel H. Bakewell, and Hans Jensen, all of said county of Aurora, in said district, to obtain a preference over the other creditors of said co-partnership through legal proceedings, namely, by virtue of several warrants of attachment issued

out of the circuit court in and for Aurora county, in the Fourth judicial circuit of the state of South Dakota, in actions pending in said court wherein the above-named parties were plaintiffs and said Bank of Plankinton was defendant. whereby all the property, both real and personal, of said co-partnership, the Bank of Plankinton, was seized and attached thereunder by the sheriff of said county of Aurora."

It does appear in evidence that the sheriff of Aurora county did on January 10, 1900, seize all the property and assets of the Bank of Plankinton by virtue of writs of attachment in his hands for service sued out in certain cases commenced by creditors of the bank; but it also, as well, appears that on the 22d of the same month the bank consented to the appointment of a receiver by the circuit court in and for the county of Aurora, state of South Dakota, and a receiver was appointed of all the property and assets of said Bank of Plankinton. Subdivision 3, § 3, c. 3, Bankr. Act 1898, declares it to be an act of bankruptcy for any person to suffer or permit, while insolvent, any creditor to obtain a preference through legal proceedings, and not having, at least five days before the sale or final disposition of any property affected by such preference, vacated or discharged such preference. After the appointment of a receiver, no sale of property could be had under the writs of attachment, nor under any execution issued on the judgment obtained in the action in which the attachment was issued. There was not sufficient time to move to vacate the attachments before the appointment of a receiver, and there is no evidence that the funds in the hands of the receiver have been distributed, or that the writs of attachment have not been vacated. The order appointing the receiver reserved the right to move to vacate the attachments on the part of the bank. So no act of bankruptcy is shown here.

Sixth. "And, for a further act of bankruptcy, your petitioners represent that on or about the 22d day of January, 1900, at Mitchell, Davidson county, in said district, the said partnership, the Bank of Plankinton, being then insolvent, suffered and permitted a certain creditor of said co-partnership, by an action commenced in the circuit court in and for Aurora county, in said Fourth judicial circuit of the state of South Dakota, wherein Mike Gales was plaintiff and said Bank of Plankinton was defendant, to obtain an order of said court appointing a receiver of all the property of said co-partnership doing a private banking business under the name and style of the Bank of Plankinton, and to thereby obstruct and defeat the operation of said act of congress in reference to bankruptcy."

This allegation is shown to be true, and is the only alleged act of bankruptcy about which there could be any question. Under the bankruptcy act of 1867, it was held to be an act of bankruptcy to permit the creation of a receivership. In re Bininger, Fed. Cas. No. 1,420. And, in general, the law is so stated in the text-books. Lowell, Bankr. p. 25; Bump, Bankr. (11th Ed.) 254. But in the case of In re Baker-Ricketson Co. (D. C.) 97 Fed. 489, it is held by Judge Lowell that where a bill in equity asking for the appointment of a receiver is brought in a state court against a corporation, and the defendant makes no opposition to the suit, but tacitly permits the receiver to be appointed and to take charge of its property, this is not a conveyance or transfer of the property, in the meaning of Bankr. Act 1898, § 3a, cl. 1, providing that it shall be an act of bankruptcy if a person shall

have "conveyed or transferred any part of his property with intent to hinder, delay or defraud his creditors," and also that under Id., cl. 3, providing that it shall be an act of bankruptcy if a person shall have suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference, where a corporation makes no defense to a bill in equity against it in a state court, and tacitly permits the appointment of a receiver, and the vesting of its property in him, it is not an act of bankruptcy by the corporation, although certain classes of persons may be entitled to larger dividends under the receivership proceedings than they would obtain in bankruptcy, if it does not appear that any such persons are concerned, or that any sale or final disposition of the property affected by the receivership has been made. In the case of Vaccaro v. Bank (C. C. A.) 103 Fed. 436, it was held by the circuit court of appeals of the Sixth circuit that the consenting to the appointment of a receiver by a copartnership did not constitute an act of bankruptcy. The court in the last case uses the following language:

"If the debtor while insolvent 'suffer or permit' a creditor to obtain a preference through legal proceedings, or if he permit his property to be 'concealed or removed' with intent to hinder, delay, or defraud his creditor, he has committed an act of bankruptcy. But it is not declared to be an act of bankruptcy if he 'permit' or 'suffer' a receiver to be appointed for the general benefit of the creditors of a dissolved and insolvent partnership, and this is the most that can be said to be shown by the evidence in this case. Under the act of 1867 it was held to be an act of bankruptcy to permit the creation of a receivership. But, as Judge Lowell observes in the case of In re Baker-Ricketson Co., this ruling was based upon section 39 of that act, which made it an act of bankruptcy to 'procure or suffer his property to be taken on legal process with intent to defeat or delay the operation of this act.' Under that provision it was held that the appointment of a receiver was legal process. But this provision is not found in the act of 1898, and the language of section 3, subd. 1, is by no means the equivalent of that section. * * * Neither has the clause touching a concealment or removal by permission any clear bearing upon the matter of the appointment of a receiver. It would be an abuse of language and a confusion of ideas to hold that the passive conduct of the Vaccaros in respect to the bill seeking a receiver was a concealment or removal with intent to hinder, defraud, or delay creditors."

Generally speaking, the receiver would take the assets of the bank subject to all valid liens, and, if the attachments were valid and were not vacated, the bank might be said to have suffered or permitted a preference through legal proceedings, in consenting to the appointment of a receiver; but, except as to the question of insolvency, the burden of proof is on the petitioners to show an act of bankruptcy, and it nowhere appears that the attachments have not been vacated, or that they will not be vacated at least five days before the final disposition of the property affected thereby. Therefore, under the testimony in this case, I shall hold that it has not been shown that the consenting to the appointment of a receiver was an act of bankruptcy, as it is not shown that any preference was thus created. But, conceding that the consenting to the appointment of a receiver under the circumstances detailed in this case was an act of bankruptcy, it is also true that, at the time the co-partnership consented to the ap-

104 F.—16

pointment of a receiver, it must have been insolvent. Insolvency, under the present bankruptcy law, is said to exist "whenever the aggregate of his [the bankrupt's] property, exclusive of any property which he may have conveyed, transferred, concealed or removed, or permitted to be concealed or removed with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." Under the act of 1867 insolvency did not mean an absolute inability to pay one's debts by the application of one's property upon the settlement of all one's affairs, but simply an inability to pay debts in the ordinary course of business. This difference in the definition of what shall constitute insolvency places a partnership, when proceeded against for the purpose of having it adjudged a bankrupt, in a very different position than what it was under the act of 1867. Under the act of 1867 a co-partnership would be insolvent if it was unable to pay its debts in the ordinary course of business. Under the act of 1898 all the property which may be made liable for the firm debts must be considered in determining whether or not the co-partnership is solvent. Partners are liable in solido. It is true that firm creditors have a prior right to firm property, and individual creditors have a prior right to individual property; but this merely goes to the marshaling of assets, not to the question as to what property is liable to pay the debts of the firm. The excess of the individual property after paying the individual debts goes to pay the firm debts if there is not sufficient firm property, and the excess of firm property goes to pay individual debts if there is not sufficient individual property to pay the individual debts; and therefore it is clear, in my opinion, that, in order that a co-partnership may be adjudged a bankrupt under the act of 1898, it must be shown, not only that the co-partnership is insolvent, but that every member of the co-partnership is individually insolvent. This view is indicated in the case of In re Blair (D. C.) 99 Fed. 76, and squarely decided in the case of Vaccaro v. Bank, supra, where that court even refuses to adjudge a co-partnership insolvent for the reason that the administrator of a deceased partner had sufficient property in his possession, belonging to the deceased, to pay the partnership debts. In that case the court said:

"The supreme test is whether the aggregate of the debtor's property, at a fair valuation, is sufficient to pay the debtor's debts. The debtor here was the partnership, as such, and the partners individually. If collectively there was property subject to partnership debts, the partnership was not insolvent. Whether a part of that property was in the hands of an administrator is a matter of no moment. It is no answer to say that the administrator should have come forward and paid the firm debts, and looked to firm assets and the individual estates of the surviving partners for reimbursement. * * * There is a sense in which a firm may be said to be insolvent where the joint property is insufficient to pay the joint debts. But if in fact there is a partner whose individual estate is ample to pay the firm debts as well as his own, the firm is not insolvent, under a law which defines insolvency as a condition where the property of the debtor, at a fair valuation, is insufficient to pay his debts."

I find from the testimony in this case (and there is no dispute upon the question) that Charles A. Johnson, one of the alleged co-partners, and Julius D. Bartow, another of the alleged co-partners, was, at the

time of the consenting to the receivership, solvent, and able—either one of them—to pay the debts of the Bank of Plankinton, so far as appears from the record in this case. The petition, therefore, will be dismissed.